Okay, the next case is number 2011-1392, MIRROR WORLDS LLC v. APPLE, Inc. Mr. Boyce. Thank you, Your Honor. May it please the Court, my name is David Boyce and I represent MIRROR WORLDS. With the Court's permission, I will reserve five minutes for rebuttal time. This case involves a claim for damages for two very important features of Apple's computer systems. The spotlight feature and the time machine feature. There's a third important feature that's also involved, but the damage calculation only involved the damages for those two. The Court below, after a jury verdict, finding infringement, held as a matter of law, dismissed the claim, and held as a matter of law that there was no infringement. The sole ground given by the Court for dismissing the claims with respect to two of the patents, the so-called method patents, 227 and 313, was that there was no proof that Apple had actually used these devices, used these features. Or that their customers had. That was on the indirect, yes, Your Honor, exactly. And that's critical. Absolutely critical, Your Honor. And that was the basis for the Court's decision, and that's the critical decision before this Court. What about the DOE issue? The DOE issue applies to certain of the claims. It doesn't apply to all the claims. Of the 427 and the 313. Exactly. It applies to 313 and 427, but not 227. Right. And there, that relates to the cover flow feature, and whether the cover flow feature is infringing under the doctrine of equivalence. But with respect to the Court's decision on even 313, in its opinion, it didn't relate, it didn't talk about the doctrine of equivalence issue. I think you can imply that from the discussion of the systems patent. Well, yes. If we accept, though, if we agree and accept. We have to review here. I thought you, I understood you asking us to review the analysis with respect to DOE. Yes, Your Honor. And whether there was sufficient evidence. Yes, Your Honor. The District Court said no. Yes, Your Honor. It went through the testimony. And if we agree with him and not with you on that, then issues with respect to 313 and 427 fall, right? Yes, Your Honor. They also fall on the grounds of whether or not they were actually used. And that issue is something that if the Court is right on, the Court below is right on that, 227 would fall as well. And it was on the use that the Court focused primarily, in fact exclusively, with respect to the method patents. And it's important, I think, to begin understanding that these patents and these features, Spotlight and Time Machine, were advertised by Apple as the primary reason to buy this software. They were said by reviewers to be the primary reason to buy this software. They were said by users, because Apple took surveys, that these were the most important reasons why this software was purchased. So what's our best case for you to establish that that's sufficient circumstantial evidence to establish the indirect infringement, that there was direct use for purposes of indirect? Well, Your Honor, I think that if you look at the Court's discussion, both in Lucent and I4I, you will see similar kinds of circumstantial evidence. I want to be clear, though, that there is more than just circumstantial evidence here. There's actual, flat-out, documentary proof that Apple used it. Apple prepared screen- What do you mean Apple used it?  No, Your Honor. No, Apple used it in testing. Apple actually used it in- But there are two issues here, right? I mean, there's the issue of direct infringement by Apple, which gets you very little in damages, I would assume. I would assume the biggie here is the indirect infringement where Apple induced, according to you, and customers used, right? So I guess I'm confused. Can we focus a little more directly on that use, in terms of customer use? Yes, Your Honor, but I don't want to not emphasize the Apple use, because that was the only one that the Court allowed to go to trial. In other words, the only verdict that we have is on direct infringement. The indirect infringement was dismissed at the close of our case, so we don't have any actual damage award before the Court on that issue. You haven't appealed the damage award on the 227, right? I thought you just appealed the damage award on the 427. I thought you didn't appeal the damage award with respect to the 313 and the 227. No, we did, Your Honor, because our entire damage award was wiped out. In other words, under the decision of the Court below, we were left with no damages at all. But as I read your brief, at least, maybe I'm mistaken, so you can easily disaccuse me of this, but under the damages section, section 5, it's substantial evidence supported a damages award limited to the 427. I didn't see any discussion of damages as it relates to the 227 and the 313. That may have been confusing, Your Honor, I apologize. That was simply to point out that if the Court separated out the 427, which is the systems patent, from the method patents, there was a standalone damage calculation for the Court to consider in that case. That was all we were trying to say there. But I'm more focused on the indirect infringement and the use of customers, so what's your best evidence there to establish that there was direct infringement and connection by customers in order to establish indirect? Well, let me begin with what the Court said below, which was that it defied logic to believe that these people did not turn it on. That's at A2380. Yeah, but he kind of fixed that up later on, did he not? I mean, he said, well, at some point, A16, A17, he says, well, if it's so clear, if it's inconceivable that they didn't use it, then why didn't MW find a person to bring on the stand and tell us that that happened? So he kind of took that back a little bit. I think that comment was in the context of the direct infringement, Your Honor. But I think it applies both ways. No, he said that, I'm sorry, but I do believe he said that with respect to customers and Apple use. And Apple, perhaps. But remember, the customer use was all out before the trial started, before the verdict. For one thing, you have the reviewers' discussion of their use, A6424, 6423, 6419, 6425, all examples of where reviewers are talking about using this and evaluating it. For example... And this is in connection with Spotlight and using email in Spotlight, which, as Mr. Lee tells us, I think, as I understand, is what's necessary to establish that you've met all the steps in the claim. Yes, for example, A5492 and 93 and 5432 are actually talking about uses of Spotlight in connection with mail. Now, the second is the instructions that Apple gave. And both in I4I and in Lucent, the court talked about the importance of looking at whether or not the alleged infringer was instructing customers to use and how to use it. And this is important also for our direct infringement case, because these instruction manuals contain screenshots of what Apple was doing. And from those screenshots alone, you can tell two things. One, you can tell that Apple itself had infringed, direct infringement, and you can show that Apple was instructing infringement on behalf of the users. But you couldn't premise a $200 million damage award on Apple's use. What was Apple's use? Testing and development? Well, testing and developing and internal use. I mean, Apple is the largest single user of its own computer. But it would be the testing and the development. And those were essential steps. But the damages expert, even though the judge never let the question of indirect go to the jury, as I recall the record, the damages expert in arriving at his calculations, such as they were, did not limit himself to just Apple use. He was talking about customer use as well, was he not? He was talking about the revenues from customer use. But you only get to the revenues for customer use if you can develop it. And you can only develop it and advertise it if you test it and use it. What I'm saying is that the testing and the using by Apple was an essential step in getting that customer revenue. So whether you're talking about Apple's use in terms of direct infringement, or the customer's use, you're going to have the same damages. Now, even if it's not the same damages, you can still calculate what those damages are, even if the court separates it. Can I, before your time runs out, can I just ask, there's so many moving parts in this case, so I just want to understand, because we've got three patents and lots of claims, and some went to jury, some didn't. At best, are you seeking a reinstatement of the jury award with respect to the 427 and the 313, and then a new trial, a trial on the indirect infringement issues? Yes, Your Honor. A trial on indirect and reinstatement of the damages on direct, and that would apply to the 227, because 227 has both direct and indirect claims. And I just want to, just for a second, I just want to point out some of these screenshots that are in the record. At A460 and A572, A6454, these show, in one place, each of them, infringement, because they show each of the elements of infringement under the 227, Claim 13. If you go on and you look at some of the manuals, for example, the Leopard Manual, and if you look at 79931 together with 6438, what you see is a combination, all the screenshots of the steps by which they practiced each of the steps of that invention. So this is not a question of merely circumstantial evidence, although I think the circumstantial evidence is strong. This is evidence of actual use by Apple and actual instruction by Apple of that use by customers. And can I just ask, just Mr. Lee, as I understand it, takes issue with, if we're talking about indirect here, you've also got, you have a need to establish inducement, that there was some evidence of inducement by Apple. And I think that's also an issue that's ferociously disputed in this case. It is, Your Honor, but under I4I and under Lucent, the court made clear that material instructions to use in an infringing way was indirect infringement, formed the basis for indirect infringement. And here you've got these instructions, you've got these manuals, you've got these advertisements, they go out and demonstrate. Well, they've got to know that the patent exists. Yes, they do. It can't just be that they instructed, right? That's a separate issue, Your Honor. But as we've indicated in our brief, they had a presentation in which we talked about the patents. They admit going to our website where we talked about the patents. They sought initially a license for the patents. So that aspect, I think, is quite solid. Thank you, Your Honor. Thank you. We'll save you rebuttal time, Mr. Floyd. Thank you, Your Honor. Mr. Lee. Thank you, Your Honor. May it please the Court, my name is Bill Lee, and together with my partners, Lauren Fletcher and Mark Fleming, I represent Apple. What occurred in Mr. Boyce's argument is actually what occurred at the district court. There was no focus upon the claims and what the claims require. The Court asked Mr. Muirwald whether- But they're dealing with a method, Mr. Lee, and the instructions to perform the method were in the manual. And the software was in the product. Doesn't it stand to reason that there must have been substantial usage? Your Honor, actually, not under this Court's precedent, and I think I can explain why. If I go to Judge Crow's last question about what's required to prove indirect infringement, there needs to be proof of an act of direct infringement, inducement by Apple, and global tech-specific intent. Your Honor is focusing on the first issue, direct infringement, and the key parameters of that inquiry are set by the ACCO decision and the EPAS decision. And what they say is this, if use of the product or use of the product in accordance with the manuals necessarily infringes, then you can reach the conclusion that Your Honor just drew. But if you cannot do that, then you must prove actual acts of direct infringement. And that's just what the district court recognized. In this case, Your Honor, you can use our computers or you can use our mobile phones without using Spotlight, without using CoverFlow, without using Time Machine. You can also use, everybody concedes, Spotlight, CoverFlow, or Time Machine without infringing, even under their theory, the claims of these patents. So that following the manuals... Okay, but can I interrupt you there? I hate to do that. But to me, the $64,000 question is if you use Spotlight to search email, whether that is infringing, and I think there's a lot of evidence on the record to establish that that is the case. Do we agree with that? If you're using Spotlight... The answer is... I'm sorry. No, go ahead. That's it. No, the answer is no. That is the argument that they've made to you, that using Spotlight to search emails infringes. The district court recognized that that's wrong, and Your Honor, I can give you two examples to show why it's wrong. If you consider Claim 1 of the 313 patent... Well, I'm looking, but I'm sorry, I'll let you answer, but I am looking specifically for this question at the 227 patent, Claim 13. So let me go to Claim 13 of the 227 patent. It doesn't just say using Spotlight while you send and receive emails, or having sent or received emails, and that's enough. Your Honor will see that there's about six or seven requirements. The last one includes having a persistent substream. Now, at A101 and A102, the district court construed substream, and a substream needs to be a time-ordered collection of data units. No one disputes that. No one challenges that. The very manual that Mr. Boyd cited to you at page 5445 demonstrates that the default setting on all of our products is not time-ordered. It demonstrates that at the very top of that page, Your Honor, it says the default setting is by groups, and the very screenshots that Mirror World has cited to the court during their argument are all set by groups. So can you – I find this a very difficult question, and what I focused on at least is there's this claim chart here, and this is all Dr. Levy. He's there with us. Right. So I've got his testimony, which he goes through limitation by limitation and says Spotlight does it. Can you point me to the testimony in the record to establish what you're saying here in terms of – I guess you're disagreeing. Well, actually, there are three answers to that, Your Honor, and part of it is to put Dr. Levy's testimony in context. One of the most important facts here is that when Mirror World went to prove their case of direct infringement or indirect, the theory pursued at trial was that our sale of the products was an act of direct infringement of the method claims. Now that is a legally incorrect theory. It's been abandoned on appeal, but it was pursued with a vengeance at trial. That's why if you go back and look at those citations to Dr. Levy, it's all stated in capability. This could happen. When you do this, it does happen. And it's not a coincidence, Your Honor, because he is trying to present a case that would get our whole $72 billion revenue base because sales of the products would infringe method claims. But sales of products don't infringe method claims. You have to go through the three steps that I went through. So that's why his testimony is phrased in that way. Then, Your Honor, the second point is this. If you ask to go to the manuals that they say teach the method, they don't. They teach the opposite. The substring is organized by group, not chronologically. You can, for sure, you can bypass the default mechanism and you could do it chronologically. But this is exactly what ACO and EPAS tell us. If you could do it in a variety of different ways, some infringing, some not, then you've got to show that someone bypassed the default mechanism and did it in a chronologically organized way. The only response... And you're saying there's nothing in the instruction manuals that instructs to do it in an infringing way? It only instructs to do it in a non-infringing way? No, if I said it, Your Honor, I was imprecise. What I meant to say is this. The manual on claim 13 of the 227, there are a lot of claims flying around. On claim 13 of the 227, the default mechanism would not infringe. You could bypass the default mechanism and set them chronologically and then it would be closer to that claim on substring. But this is where ACO and EPAS are critical. They're saying that if the manual describes five different ways to do it, one might infringe or don't, you cannot infer infringement in that circumstance. But you know, Mr. Lee, I have to interrupt you because you argue very eloquently, and as between you and Judge Prost, but this was a jury trial, and one assumes that these arguments were presented at length, much more length than the 15 minutes we have here, and explored in depth, and it came out different. Well, Your Honor, on direct infringement it came out differently. On indirect infringement and infringement under the doctrinal, literally under the doctrinal equivalence of the cursor and pointer limitations, Mr. Boies is correct. They didn't go to the jury because the district court performed the function that I think. I'm talking about what went to the jury. And all that went to the jury, Your Honor, was direct infringement. All right, but the district judge decided the jury got it wrong. And I'm trying to understand where in the record there is, where the support for the jury verdict is insufficient. Fair enough. That is the direct infringement claim, and I have one additional point to Judge Prost's question, but let me answer this and then I'll come back to Judge Prost's question. Your Honor, the district court got it right for just this reason. The theory that was pursued at trial was that sale of the product infringed the method claims. And the district court said, under this court's precedent, that is legally incorrect. He was right, and, in fact, it was abandoned on appeal. Well, that relates to damages, perhaps, rather than infringement. Your Honor, I think, yes, but it's a predicate before you can get to damages. So then what happens on appeal is we come before this court, and they cite three acts of direct infringement. One is a presentation by Mr. Jobs, and they concede that no one has taken what he did and compared it to the claims of either the 227 or the 313. But this is before the jury. You're asking us to re-weight, re-decide? No, actually, Your Honor, I'm asking the court to do what the district court did, which is look at two things. Look at the legal theory that was pursued below and to say that the district court was correct, that that legal theory was insufficient. And now look at the two or three instances of direct infringement that they offer you today because the original theory has been abandoned. You're saying the jury was incorrectly instructed? Your Honor, I think that the district court correctly instructed them, and then he went back and he looked at the proof, and he said that no reasonable jury could reach a determination of direct infringement. So you're saying that sales do not constitute direct infringement without showing that Apple performed the claim steps, and it's insufficient to merely assume that Apple conducted tests and Mirror World did not present any evidence of testing. That's exactly right. Your Honor, this is a case where, and I believe it's the E-PASS decision that says it most explicitly, and Judge Davis said the same. If it was so easy to prove these acts of direct infringement, prove them. The last point I was going to make... Can I ask you, though, just to follow up to Judge Newman because I assume I may have heard this wrong, but I also thought that the DOE question, at least with respect to the computers, not the mobile devices, also went to the jury. So it wasn't just... No, that's right. And so the jury did review the DOE. That is correct. And I should say, to clarify one issue on Your Honor's question about the 427 and the 313, the opinion actually goes to the 313 on DOE as well, and in fact at footnote 10 at page 820, the district court says the analysis is identical. And I think this brings me back to sort of the end of Judge Prost's question about, so what is it that was missing, right? And there is the theory that was pursued. There is a failure to compare it to the claims. There is a failure to address the fact that, no, spotlight plus receiving and sending e-mails is not sufficient. If we just look at the claim, claim one, claim 13, is perhaps the one they focus on the most. Claim one of the 313 patent is even more obviously not proven. It's a claim that has an antecedent basis and then would have required a series of steps where spotlight was run on a particular data unit. Mr. Lee, what I'm hearing is that there may well have been infringement that wasn't true. Your Honor, I think that... So, in effect, they lost below and are coming here for another bite at the apple. That's exactly... Yes. And I've got it on both bases. The answer is, for sure, yes. And I do think that the statement in EPAS that if it would be so easy to prove, you would put someone on the stand to prove it. I think, Your Honor, the last point I was going to make on claim 13 of the 227 patent is this. It's not so easy to prove. If you look at that subscreen limitation and you look at the claim interpretation that Judge Davis adopted, which has not been appealed here, they'd have to find someone who took our system, which actually searches by groups, bypassed the groups, and then went in and bypassed the default mechanism and chronologically organized. It's not that hard. And if they did, it would have had substantial implications for damages. If I could make two other points... Not if you're right on the indirect and inducement. So why don't you want to touch on that? Right. Well, Your Honor, this is a place where I think these three requirements of an act of direct infringement, acts by apple to induce, and the global tech DSU-specific intent are important. Really, if you step back from Mirold's presentation, it is an argument that we're offering circumstantial evidence that maybe some customer infringed. There is circumstantial evidence that maybe someone was induced, but we suggest that DSU in the en banc portion of the opinion requires more. It requires that you have a specific intent to induce an act of infringement, and there needs to be a time. There needs to be a relationship between them. And if you take the reviewers that Mr. Boies referred to, there is nothing in the record to show that we induced the reviewers to do anything. If you take the surveys, there is nothing in the record to suggest we induced them to do anything. On the manuals, these are manuals, and to go back to ACO and EPAS, which is different than LUCEN, and LUCEN, someone got on the stand and said, I performed all the steps. I did each one of them. I directly infringed. And by the way, my wife did as well. And if you follow this set of instructions... But you don't need a body. You don't really need a body, right? I mean, it's clear that circumstantial evidence is sufficient. Your Honor, I think that circumstantial evidence is sufficient, but then the question becomes, what has this Court said about the level of circumstantial evidence? And what the Court has said is it needs to be circumstantial evidence that use of the product would necessarily infringe or following moleculon. There was only one way to solve Rubik's Cube. So if you followed the solution, that's all you would have. The one other point I would make is this before my time is up. On the cursor or pointer, those limitations are in every single asserted claim of the 313 and the 427. They are dispositive... Is that the essence of all the equivalence allegations? Yeah, all of the equivalence allegations are focused on those limitations. May I finish the answer, Your Honor? No, please finish. And that is the essence, Your Honor, and there are three critical points. The first is that it's not a single limitation. It's three limitations in every circumstance which were important to allowance, and they are displaying the cursor, having the cursor move without clicking, have it touch the document. Second point is, while they claim today that they did a function-way result test, they conceded below they hadn't, and if the court considers the evidence cited in the reply brief on this issue, you'll find that with one exception... Yeah, but they don't have to do a function-way result under our case law, right? I mean, they call that insubstantial differences. Right. There are cases that say, yes, there's function-way result, there's insubstantial differences. Yes, Your Honor. And then if you're going to go insubstantial differences, you have to explain why the differences are insubstantial, not just to a cursor or pointer, but to a claim limitation that requires display, moving without clicking, touching, and they have to explain why the district court was incorrect that allowing equivalence of all three of those limitations wouldn't vitiate the elements. Thank you, Your Honor. Okay, thank you, Mr. Moody. Mr. Boyles, you have your full rebuttal time. Thank you, Your Honor. Let me just begin by answering the question, if it was so easy to prove actual use, why didn't we prove actual use? My point that I tried to make was that we proved actual use when you look at the screenshots, and they don't address these screenshots at all, and that's because those screenshots are absolute proof of actual use. Now, what about Mr. Lee's point, though, on the fact that just using Spotlight and searching emails is not sufficient to meet the claim limitation, and that you need the streaming part, and you didn't establish that was in the instructions? But we did, Your Honor, and if you look at the nurse page he cited you to, A5445, and at the first paragraph, it talks about search results being in group order. The third bullet says that within the group, the default search results are grouped by time. It's a time sequence. That's exactly what the instruction says. Now, independent of what the instruction says, the undisputed testimony at trial, for example, at A1602, lines 11 to 14, and also on A1565, 1570, and 1572, the testimony is that when you do these searches, within the group, it is all time order. It is also undisputed that the mainstream is time order. So you have both the mainstream and the substreams, time order. That was the evidence before the jury. I don't think there would have been a basis for the jury to conclude to the contrary. There certainly is a basis for the jury to have concluded, consistent with their own manual and consistent with Dr. Levy's testimony, that that was met. But the jury didn't reach this question, right? The judge took away from the jury the indirect infringement, which implicated customer use as direct, right? So we don't really have a finding by the jury on that point, do we? You don't, and the real question is whether the jury ought to be permitted to examine that evidence, Your Honor. Now, he said that there was nothing in the record that suggested that Apple had actually induced people to use these features. Apple called these the most revolutionary development in modern operating system history. That was Mr. Jobs. They said this is the most important reason to buy this software. The reviewers said Spotlight is worth the price of the upgrade alone. The reviewers repeatedly said these time machine and Spotlight are the two most important features. The analysis was that 32% of the people who bought Leopard bought it entirely because of time machine. The testimony was that 23% of the people, the highest number of any of the features, acquired Tiger. The most important feature in Tiger was Spotlight. This was the evidence. This is how they advertised it. This is how they promoted it. This is how they demonstrated it. The demonstration that counsel refers to by Mr. Jobs in January 2005, that was the public announcement of Tiger. It didn't get started selling until April. He described Spotlight as the most important feature and he demonstrated it. He demonstrated it in connection with email. The idea that we didn't prove specific examples of actual use simply is not consistent with the record. Of course, all this was in front of the jury. In addition to that, you have the fact that the screenshots demonstrate not only that they are using it themselves, but they are instructing, inducing other people to use it. When Mr. Jobs gets up and says, this is our most important feature, this revolutionizes the way we use computers, that is an inducement to people to use it. When Apple advertises it as the most important feature, that is an inducement to use it. When Apple instructs them to do it, that is an inducement to use it. When reviewers and surveys show that customers have accepted that and use it. It is not possible. If you look at the survey data, their own survey data as to how many people use Spotlight and how many people use mail, they are both way over 50%. You cannot have somebody, it is arithmetically impossible under their own survey evidence to have people who are using those computers and were not at the same time, both of them, using Spotlight and mail. The evidence there is absolutely crystal clear. The other things about this issue about the time sequence of the substream, the judge did not even get into that. If you look at what the judge did, the judge dismissed this on the grounds that people were not using it. If you get into the evidence, it is absolutely clear that if they used it, they infringed. The judge dismissed it below, not on the grounds that it did not infringe because it did not follow some of the claim limitations. He dismissed it because he believed we had not adequately proven actual use. With respect to indirect infringement, it did not prove active inducement. I think I have shown you where the evidence is that the jury could find that. I think even if you were sitting as a jury, you ought to find it that way. But you are obviously not sitting as a jury. This is something in which the question is, in a case in which the validity of the patent is conceded, there is no dispute about claim construction, it is just a question of infringement. Should the jury verdict on infringement be respected? Thank you Mr Boyce and thank you Mr Lee. The case has taken into submission.